# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

KATHY R. CAIN,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )   Case No. CIV-14-057-KEW
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social                  )
Security Administration,                )
                                        )
            Defendant.                  )

## OPINION AND ORDER

Plaintiff Kathy R. Cain (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 4, 1964 and was 48 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained a bachelor's degree. Claimant has worked in the past as an accountant. Claimant alleges an inability to work beginning July 15, 2008 due to limitations resulting from hepatis C, arthritis, spinal impairments, shoulder problems, stomach

3

problems, cancer, pancreatic disease, and mental impairments.

## Procedural History

On June 5, 2012, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 3, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") B. D. Crutchfield in Tulsa, Oklahoma. He issued an unfavorable decision on July 11, 2013. The Appeals Council denied review of the ALJ's decision on December 19, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider, weigh, and evaluate the medical evidence; (2) failing to evaluate whether Claimant meets or equals Listing 12.07;

and (3) failing to perform a proper credibility determination.

**Evaluation of the Medical Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of Hepatitis C, anxiety disorder, depressive disorder, and chemical dependence by history. (Tr. 17). The ALJ determined Claimant retained the RFC to perform sedentary work. (Tr. 20). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of charge account clerk, food and beverage order clerk, and telephone information clerk, all of which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 24). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 25).

Claimant first challenges the ALJ's assessment of muscle spasms, disorders of the spine, and remote history of cervical cancer as non-severe impairments. The ALJ determined that no evidence in the record indicated that these conditions singly or in combination with other impairments resulted in any significant limitation in Claimant's ability to do basic work activities. (Tr. 17). Claimant specifically concentrates on her back disorder, contending the medical record indicates she was diagnosed with "multilevel spondylosis" with the attendant consequences. On March 27, 2012, Dr. Lana Dawn Myers recognized Claimant's complaints of lower back pain but found she had negative straight leg raising and

5

5/5 muscle strength in her lower extremities, although she did have tenderness in her lower lumbar paravertebral musculature. Dr. Myers noted Claimant had not shown for her pain management appointments because she "says did not get her mail." Claimant presented in no acute distress. (Tr. 428). X-rays that were taken indicated multilevel spondylosis with intervertebral disc spaces and vertebral body heights within normal limits. The impression from the x-ray review was "no acute disease." (Tr. 508).

On May 4, 2012, Dr. Jorge R. Mera found Claimant moved her extremities well with a normal gait. (Tr. 576). On June 22, 2012, Dr. Douglas Young also indicated Claimant moved her extremities well with a normal gait and intact gross motor function and gross sensory function. (Tr. 393-94). The medical record is consistent in these findings through January of 2013. (Tr. 385, 630, 651, 772, 776).

. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability,

6

the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact multilevel spondylosis was diagnosed does not translate into a severe impairment. The ALJ did not err in finding this condition as well as several others did not significantly limit Claimant's ability to work.

Claimant also contends her mental condition prevented her from keeping her appointments. Nothing in the record supports this assertion. At the time of the delinquency, Claimant stated she did not get her mail. This adversely reflects upon the credibility of Claimant's subsequent testimony that she has mental problems which precluded her attendance.

Claimant argues the ALJ failed to account for her sleep disorder. While an ARPN did make a single reference to "insomnia" in one medical record (Tr. 772), no diagnosis of a sleep disorder which impairs Claimant's ability to engage in basic work activities appears in the record. Accordingly, the ALJ's findings on the condition were accurate. (Tr. 18).

Claimant next contends the ALJ should have included Somatoform disorder due to her other conditions of pancreatic disease, CFS, PTSD, H. Pylori infection, and left leg blockage. Again, Claimant

7

refuses to acknowledge that this condition has not been diagnosed or shown to impair Claimant's ability to engage in basic work activities. Including these conditions in the ALJ's analysis as severe impairments would have no support in the medical record.

Claimant states the ALJ erred in failing to include this litany of conditions in his hypothetical questioning of the vocational expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's questioning effectively mirrored his RFC findings with precision and the impairments which were demonstrated in the record to have an effect upon her ability to engage in basic work activities.

In a continuing line of disconnected arguments under the same heading, Claimant contends the ALJ gave "great weight" to the

opinions of the consultative examiners while selectively choosing among their findings to support his conclusion of non-disability. Specifically, the ALJ did not include a two centimeter difference in leg length and thigh circumference and various findings in mental status testing in his consideration. Again, none of these narrow areas were shown in the evidence to cause anything but a minimal impact upon Claimant's ability to engage in basic work activities.

Claimant asserts the consultative examinations were stale, having been performed in 2009. Claimant has not demonstrated through competent medical evidence that a significant change in her condition has caused these examinations to be stale.

Claimant contends the ALJ rejected the opinion of Dr. Douglas Nolan. Dr. Nolan provided a medical source statement dated June 7, 2012 which included an estimation Claimant could not work for 3 months showing Claimant suffered from chronic pain, anxiety and depression which could not be controlled with medication. (Tr. 746). He also included a statement from April of 2012 which restricted Claimant from working for 3 months for essentially the same reasons. (Tr. 747). The ALJ gave these opinions "no weight" because they were not provided by an acceptable medical source and were inconsistent with the medical evidence. (Tr. 23). The ALJ does not explain the basis for not finding Dr. Nolan to be an acceptable medical source let alone a treating physician, a status

it appears Dr. Nolan occupied.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a

10

specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id</u>. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." <u>Id</u>. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (quotations omitted).

The ALJ did not proceed through this analysis because he mistakenly believed him to be a non-acceptable medical source. On remand, the ALJ shall proceed through the required analysis of Dr. Nolan's opinions. He may still conclude the opinions are inconsistent with the medical record but he must proceed through the appropriate rubric to do so.

Claimant again contends the ALJ failed to include restrictions upon her ability to concentrate, persistence and pace in his hypothetical questioning of the vocational expert. This Court

finds the questions accurately reflected the limitations in these areas.

**Consideration of Listing 12.07 - Somatoform Disorder**

Claimant suggests the ALJ should have considered whether she met the criteria for Listing 12.07 for Somatoform disorder. While the ALJ did not specifically consider Listing 12.07, she did consider Listings 12.04, 12.06, and 12.09. Listing 12.07 requires the following:

> 12.07 Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> 1. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented by evidence of one of the following:
>
> 1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
>
> 2. Persistent nonorganic disturbance of one of the following:
>
> a. Vision; or
>
> b. Speech; or
>
> c. Hearing; or
>
> d. Use of a limb; or
>
> e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
>
> f. Sensation (e.g., diminished or heightened).
>
> 3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;
>
> And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

To satisfy the requirements of Listings 12.04, 12.06, and 12.09, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04, 12.06, 12.09.

No medical evidence has indicated Claimant has marked difficulties in any of the three functional areas common to all of these listings and no repeated episodes of decompensation. Although the ALJ did not expressly address Listing 12.07, Claimant would still have not qualified for the Listing since the medical record does not support the marked limitations required. Only mild limitations in activities of daily living and maintaining social functioning were noted. (Tr. 19, 182-84). Moderate limitations in maintaining concentration, persistence or pace were found by the ALJ, citing medical sources. (Tr. 19, 393-94, 772). No episodes

of decompensation were found. (Tr. 19). Claimant could not have qualified for any of these Listings.

## Credibility Determination

The ALJ noted the medical evidence which indicated Claimant's conditions could be controlled by medication as a basis for questioning the credibility of her testimony. Because Dr. Nolan's reports must be reconsidered and he found Claimant's conditions could not be controlled with medication, the ALJ shall reassess Claimant's credibility after considering Dr. Nolan's treating physician's report and affirmatively link his credibility findings to the record.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE